

FILED
6/10/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

DIEGO VARGAS

No. 20 CR 708

Judge Elaine Bucklo

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant DIEGO VARGAS, and his attorney, MICHAEL LEONARD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with maliciously attempting to damage and destroy, by means of an explosive device, a building used in an activity affecting interstate and foreign commerce, namely, a restaurant, in violation of Title 18, United States Code, Section 844(i).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment which charges defendant maliciously attempting to damage and destroy, by means of an explosive device, a building used in an activity affecting interstate and foreign commerce, namely, a restaurant, in violation of Title 18, United States Code, Section 844(i)..

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

On or about June 1, 2020, at Naperville, Illinois, in the Northern District of Illinois, Eastern Division, the defendant maliciously attempted to damage and destroy, by means of an explosive device, a building used in an activity affecting interstate and foreign commerce, namely, a restaurant, all in violation of Title 18, United States Code, Section 844(i).

Specifically, the Egg Harbor restaurant is located in Naperville, Illinois and uses a building that involves an activity affecting interstate commerce.    More specifically, the restaurant served food and beverages which were transported into the State of Illinois from outside of the State of Illinois. On June 1, 2020, the defendant Diego Vargas picked up a street pole with a sign and threw the pole through the window of the Egg Harbor restaurant in Naperville. The defendant, with

the intent to damage the restaurant, then threw a lit explosive device through the window causing two explosions.

7.    Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following additional offense:

On or about May 31, 2020, at Aurora, in the Northern District of Illinois, Eastern Division, the defendant conspired with Fermin Ocampo-Tellez and Michael Gomez, and with others unknown, to commit an offense against the United States, namely, to take and carry away, with the intent to steal money exceeding $1,000 in value belonging to, and in the care, custody, control, management, and possession of First Midwest Bank, namely, the United States currency stored in the First Midwest Bank ATM, located at 2 South Broadway, Aurora, Illinois, in violation of Title 18, United States Code, Section 2113(b), all in violation of Title 18, United States Code, Section 371.

Specifically, on or about May 31, 2020, a group of individuals, including VARGAS, attempted to steal U.S. currency from the Automated Teller Machine ("ATM") in the drive-through of the First Midwest Bank, at 2 South Broadway, Aurora, Illinois. At approximately 9:38 p.m., VARGAS, Ocampo-Tellez, Gomez, and a group of individuals gathered in front of the ATM machine. VARGAS communicated with codefendants Ocampo-Tellez and Gomez, and with others unknown, in front of the ATM. The group worked together to attempt to break into the ATM and steal the currency stored inside. VARGAS hit the ATM with a baseball

3

bat. VARGAS and others pulled apart a street sign, and VARGAS then used the metal pole from the street sign to both hit the ATM and attempt to pry it open, in order to take the money inside. VARGAS also tried to move the ATM from where it was anchored in the bank's drive-through, and he gripped the ATM and used his body weight to try to move or tip the ATM. He did this several times, in combination with other individuals, including his codefendants, who were also trying to break into the ATM with the intention of stealing the money stored within it.

The defendant acknowledges that the government can prove that, on or about May 31, 2020, the First Midwest Bank ATM held at least $50,260 in United States currency and that the estimated cost of repair of the ATM as a result of defendant's actions is at least $40,000. The defendant further acknowledges that on or about May 31, 2020, deposits of First Midwest Bank were insured by the Federal Deposit Insurance Corporation.

### Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A minimum sentence of 5 years' imprisonment and a maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than five years.

4

b.      Defendant further understands that the Court must order restitution to the victim of the offense in an amount determined by the Court.

c.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.      Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b. **Offense Level Calculations**.

Charged Offense

i. The base offense level is 20 pursuant to U.S.S.G §§ 2K1.4(a)(2)(C) because the defendant endangered a place of public use.

Stipulated Offense

ii. The base offense level is 6, pursuant to Guideline § 2B1.1(a)(2) and Guideline § 2X1.1(a).

iii. Pursuant to Guideline § 2B1.1(b)(1)(D), the base offense level is increased by six levels, because the loss amount was more than $40,000.

iv. Pursuant to Guideline § 2X1.1(b)(2), the total offense level is reduced by 3 levels because the defendant did not complete the object of the conspiracy.

c. **Combined Offense Level**

d. Pursuant to Guideline § 3D1.2, Charged Offense and the Stipulated Offense do not group. Pursuant to Guideline § 3D1.4(c) the total offense level for the Stipulated Offense may be disregarded because it is 9 or more levels less serious than

the Charged Offense. Therefore, the anticipated combined offense level is the anticipated total offense level for the Charged Offense, which is 20.

     e.    **Acceptance of Responsibility.** Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

     f.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 5 and defendant's criminal history category is III:

     i.    On or about December 15, 2014, defendant was convicted of misdemeanor unlawful participation in streetgang-related activity in the Circuit Court of Kane County, Illinois and he was sentenced to 20 days' imprisonment. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

     ii.    On or about March 16, 2016, defendant was convicted of robbery in the Circuit Court of Kane County, Illinois, and he was sentenced to 120

days' imprisonment. Pursuant to Guideline § 4A1.1(b), defendant receives two criminal history point for this conviction.

   iii.  On or about July 19, 2016, defendant was convicted of the misdemeanor of not having a valid driver's license in the Circuit Court of Kendall County, Illinois, and he was sentenced to three months of conditional discharge. Pursuant to Guideline § 4A1.2(c)(1), defendant receives no criminal history points for this conviction.

   iv.  On or about September 7, 2016, defendant was convicted of misdemeanor possession of cannabis in the Circuit Court of Kane County, Illinois, and he was sentenced to 12 months of conditional discharge. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

   v.  On or about July 14, 2020, defendant was convicted of misdemeanor obstruction of justice in the Circuit Court of Kane County, Illinois, and he was sentenced to 12 months of conditional discharge. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

   g.  **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 17 which, when combined with the anticipated criminal history category of III, results in an anticipated advisory sentencing guidelines range of 60 months' imprisonment pursuant to Guideline § 5G1.1(b), in addition to any supervised release, fine, and restitution the Court may impose.

h.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

11.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

12.     Each party is free to recommend whatever sentence it deems appropriate.

13.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to the Egg Harbor Restaurant in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.  Defendant also agrees to pay additional restitution, arising from the stipulated offense set forth above, in an amount to be determined by the Court at sentencing, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664.

15.     Restitution shall be due immediately and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

16.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

18.     After sentence has been imposed, the government will move to dismiss the indictment in 20 CR 331 as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

19.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 708 and 20 CR 331.

20.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

11

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

21.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a

12

reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    b.  **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to

trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

22.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

23.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

24.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility

14

pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

26.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

28. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

29. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

30.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

31.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

32.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: *June 10, 2021*

STEVEN DOLLEAR  Digitally signed by STEVEN DOLLEAR
Date: 2021.06.10 09:06:58 -05'00'
_____
Signed by Steven J. Dollear on behalf of
JOHN R. LAUSCH, JR.
United States Attorney

_____
DIEGO VARGAS
Defendant

_____
BARRY JONAS
Assistant U.S. Attorney

_____
MICHAEL LEONARD
Attorney for Defendant