```
1                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
2                         EASTERN DIVISION

3
     UNITED STATES OF AMERICA,     )
4                                  )  Docket No. 20 CR 708
                    Plaintiff,     )
5                                  )
               vs.                 )
6                                  )  Chicago, Illinois
     DIEGO VARGAS,                 )  March 3, 2022
7                                  )  10:30 a.m.
                    Defendant.     )
8
                 TRANSCRIPT OF PROCEEDINGS - Sentencing
9                BEFORE THE HONORABLE ELAINE E. BUCKLO

10
     APPEARANCES:
11
     For the Plaintiff:        UNITED STATES ATTORNEY'S OFFICE
12                             BY:  MR. BARRY JONAS
                               219 South Dearborn Street
13                             Suite 500
                               Chicago, Illinois  60604
14

15   For the Defendant:       LEONARD TRIAL LAWYERS LLC
                               BY:  MR. MICHAEL I. LEONARD
16                             120 North LaSalle Street
                               Suite 2000
17                             Chicago, Illinois  60602

18

19

20

21   Court Reporter:          SANDRA M. TENNIS, CSR, RMR, FCRR
                               Official Court Reporter
22                             219 S. Dearborn Street, Room 2260
                               Chicago, Illinois  60604
23                             (312) 554-8244
                               sandra_tennis@ilnd.uscourts.gov
24

25
```

1        (Proceedings had in open court:)

2             THE CLERK:  Calling Case No. 20 CR 708-1, USA versus

3  Diego Vargas.

4             MR. LEONARD:  Do you want us to stand up here, Judge,

5  or do you want us to --

6             THE COURT:  You could stand.

7             MR. LEONARD:  Okay.  Mr. Vargas?

8             THE COURT:  If you people are vaccinated -- which I

9  think everybody is supposed to be -- if you want to, you

10  certainly can take off your masks.

11             MR. LEONARD:  Okay, good.  Thank you, Judge.

12             THE COURT:  It's your choice.  I will too.

13             Okay.  Well, we're here for sentencing.  I don't

14  think that anybody wanted any changes; did they?

15             MR. JONAS:  No, Judge, the government has one

16  correction to the PSR.

17             THE COURT:  All right.  I missed that.  What is it?

18             MR. JONAS:  No, you didn't miss it, Judge.  I forgot

19  to include it in my sentencing memo.  Paragraph 2 on Page 4.

20             THE COURT:  Uh-huh.

21             MR. JONAS:  Roman Numeral II says that the plea

22  agreement is a cooperation plea agreement.  It's not.

23             THE COURT:  Okay.

24             MR. JONAS:  That was the only correction.

25             THE COURT:  So just take out the whole paragraph?

| | | |
|---|---|---|
| 00:06 | 1 | MR. JONAS:  Yes, please. |
| 00:06 | 2 | MR. LEONARD:  And we just have two issues.  We raised |
| 00:06 | 3 | some non-substantive issues, I don't think need to be changed, |
| 00:06 | 4 | on Page 3 of our response to the PSR, Judge.  The only one that |
| 00:07 | 5 | I think might be necessary for a change is Paragraph 85.  It is |
| 00:07 | 6 | our position strongly that Mr. Vargas needs alcohol and drug |
| 00:07 | 7 | assistance, and I think that indicates that. |
| 00:07 | 8 | THE COURT:  Which paragraph? |
| 00:07 | 9 | MR. LEONARD:  Paragraph 85 on Page 25. |
| 00:07 | 10 | THE COURT:  Oh, okay.  Yeah, I agree. |
| 00:07 | 11 | MR. LEONARD:  Okay.  And then one other thing.  I |
| 00:07 | 12 | just want -- my own correction to my own submission.  I think I |
| 00:07 | 13 | had indicated that Mr. Vargas' serious medical incident was a |
| 00:07 | 14 | heart-attack-like event, but it actually was a pulmonary |
| 00:07 | 15 | embolism, a blood clot, which is consistent with being in |
| 00:07 | 16 | confined conditions.  So I just want to bring that to the |
| 00:08 | 17 | court's attention.  That's not a PSR change. |
| 00:08 | 18 | THE COURT:  How did he get that? |
| 00:08 | 19 | MR. LEONARD:  I'm sorry?  I had mentioned it at |
| 00:08 | 20 | page -- |
| 00:08 | 21 | THE COURT:  Yes, now that you're saying it, I -- |
| 00:08 | 22 | MR. LEONARD:  What's that? |
| 00:08 | 23 | THE COURT:  Okay.  When was that? |
| 00:08 | 24 | MR. LEONARD:  This was in June of 2021. |
| 00:08 | 25 | THE COURT:  So did he have COVID at the time? |

00:08 1    MR. LEONARD:  No.  He had a pulmonary embolism.  He
00:08 2  was taken to Northwestern.
00:08 3    THE COURT:  Right.  I mean, people get them.  They're
00:08 4  terribly serious.
00:08 5    MR. LEONARD:  Yeah.  It wasn't because of COVID.
00:08 6  Yeah, they thought it was like a near-death type of situation.
00:08 7  But he passed out, he was laying there on the ground blue, they
00:08 8  picked him up.  They didn't know -- they think they thought it
00:08 9  was drug related, so they were kind of being harsh with his
00:08 10  body and dropped him a couple times.  But it was a pretty
00:08 11  serious event.
00:08 12    THE COURT:  But they got rid of the blood clot?
00:08 13    MR. LEONARD:  Yeah, they gave him thinners for three
00:08 14  or four months.  So far he hasn't had any more, so that's good.
00:09 15    THE COURT:  Well, he shouldn't, I guess, have more.
00:09 16    Okay.  Well, I'll listen to what the government has
00:09 17  to say.  I mean, the guidelines here in some ways considering,
00:09 18  I mean, I don't know, he probably maybe could have been charged
00:09 19  in a harsher way, I don't know.  But the offense level is 17,
00:09 20  Criminal History Category of 2.  The guidelines really make no
00:09 21  difference because there is a minimum sentence of 60 months,
00:09 22  and you're not asking -- Well, I mean, I don't know that you
00:09 23  can, I mean, since the guidelines were -- well, you could, I
00:09 24  guess, but the guidelines are considerably below that.  So,
00:09 25  actually, it looks like 60 months is probably it, minimum, and

00:09  1    that's all you're asking for.  And since it's considerably

00:09  2    above the guidelines, I'm not sure that there's an awful lot to

00:10  3    talk about.  But please go ahead.

00:10  4              MR. JONAS:  Judge, there's not.  We are asking for

00:10  5    the 60 months.  I have a video of the crime in which he was

00:10  6    convicted of before your Honor.  It's about 15 seconds.  I know

00:10  7    Mr. -- if I play it, Mr. Leonard wants to play another video

00:10  8    that's also a couple of minutes.  We're happy to play it.  I

00:10  9    think it just helps your Honor understand the crime in which he

00:10  10   has pled guilty to, if you want.

00:10  11             THE COURT:  I don't know that I need to.  It

00:10  12   obviously was serious.  I assume this was during that -- one of

00:10  13   the two periods of unrest, which doesn't, to me, excuse it at

00:10  14   all.  So fortunately I guess nothing was hurt and no one was

00:10  15   hurt.  But it sure could have been otherwise.

00:10  16             MR. JONAS:  Yes, Judge.  If you remember, in addition

00:10  17   to the crime that he has pled guilty to, which occurred in

00:10  18   Naperville during the riots, he threw -- it wasn't --

00:10  19   Mr. Leonard describes it as an M-80.  I don't think it was an

00:11  20   M-80.  It was a firework designed to go into a tube and then be

00:11  21   shot into the air and explode.

00:11  22             So there were two explosions in the restaurant.  One

00:11  23   was the one that's designed to shoot in the air, not quite as

00:11  24   big, and then the one that would go off in the air, which was a

00:11  25   much bigger explosion in the restaurant.  Fortunately, no one

00:11    1    was hurt.  I don't believe anyone was in the restaurant at the
00:11    2    time.  The actual physical damage isn't as much as you would
00:11    3    expect.  There was some to the restaurant, but not that much.
00:11    4          There is also a stipulated offense when the night
00:11    5    before, in Aurora, when he was part of a crowd that -- a
00:11    6    spontaneous crowd --
00:11    7          THE COURT:  The ATM.
00:11    8          MR. JONAS:  -- that attacked an ATM.  There's videos
00:11    9    of that.  I have it, it's longer.  I don't know if your Honor
00:11   10    needs to see it.  The crowd did a pretty nice job beating up
00:11   11    the ATM.  The defendant was all in on that.  In fact, he helped
00:11   12    break up a board, like a wooden sign with planks, and he took
00:11   13    the planks to -- the two-by-fours to help continue beating up
00:11   14    the ATM.
00:12   15          The restitution that we have submitted are both for
00:12   16    the damage to the restaurant and for the damage to the ATM.
00:12   17    There are other people who have been charged as part of the,
00:12   18    I'll call, the ATM crime, so the restitution is joint and
00:12   19    severable.  I have those videos.  Again, if you want to see it,
00:12   20    Judge, I can play it.  If not, it's fine.
00:12   21          THE COURT:  There's not really any contest here on
00:12   22    the sentence.  I don't really see any need to.  I don't
00:12   23    personally care to re-visit all of that as long as -- in that
00:12   24    way if we don't need to.
00:12   25          MR. JONAS:  That's fine, Judge.

00:12   1    MR. LEONARD:  That's fine with me, Judge.
00:12   2    THE COURT:  Okay.
00:12   3    MR. LEONARD:  Because what I was going to -- if
00:12   4  Mr. Jonas was going to play it, which I don't think is
00:12   5  necessary, I just wanted to play the part that was consistent
00:12   6  with what I talked about in my submission where he was talking
00:12   7  about how he was originally with all the student leaders,
00:12   8  unfortunately with a bottle of alcohol, and was with them a
00:12   9  long time, and then, unfortunately, gets very intoxicated.  But
00:12   10  I don't think we need to see that to understand that that's
00:12   11  true.
00:12   12    THE COURT:  Okay.
00:12   13    MR. JONAS:  Judge, in terms of argument, I'll rest on
00:12   14  my submission.
00:13   15    THE COURT: Okay.
00:13   16    MR. LEONARD:  I'll rest, Judge.  And I think you had
00:13   17  made the comment that it's not harsh enough.  And the reason
00:13   18  why I think five is more than -- greatly more than enough is
00:13   19  there's two cases in this building, the US vs. Fagundo, 21 CR
00:13   20  195, where a defendant went out, bought fireworks, bought
00:13   21  lighter fluid, planned to blow up a CPD police car, and did
00:13   22  light it on fire.  And that person got, pursuant to the
00:13   23  agreement with the government, a below mandatory minimum
00:13   24  sentence of three months probation from Judge Gettleman.  And I
00:13   25  think that conduct is no worse than this.  And that's an

00:13  1   awfully different sentence.

00:13  2          And then there is another case, US vs. O'Donnell, in
00:13  3   this building, 20 CR 260, pending before Judge Wood where
00:13  4   similarly the US Attorney's office agreed to let the defendant
00:13  5   in that case plead below the mandatory minimum of five years,
00:13  6   just like that other case.  And that's very similar, too, where
00:13  7   an individual admitted to attempting to light a Chicago police
00:14  8   fire -- light a Chicago police vehicle on fire.

00:14  9          So I think five here in this case is excessive.  But
00:14  10  in terms of disparities, I just want to bring those to your
00:14  11  attention.  I know that there is a mandatory minimum that he
00:14  12  has pled to, so that's the issue.

00:14  13         THE COURT:  Okay.  Well, I don't know who the
00:14  14  judge -- Oh, you said Judge Wood?

00:14  15         MR. LEONARD:  Judge Wood in the second, Judge
00:14  16  Gettleman in the first, yeah.

00:14  17         THE COURT:  Judge Gettleman in the first one?  Don't
00:14  18  have an explanation, other than I know they're suburbanites.
00:14  19  I'm not, so.

00:14  20         I don't know, it seems to me that there is no
00:14  21  justification for that kind of civil unrest where you're
00:14  22  torching things, and all, and -- well, I guess that actually
00:14  23  was out in Naperville, it wasn't here, but it's -- you can't
00:14  24  have a civilized society if you have that kind of thing.  The
00:15  25  repercussions from all of that are still going on, you just

00:15  1  have to walk outside.  So I guess -- I think it's very serious.
00:15  2  I understand protests, I don't -- but not destruction.
00:15  3            Okay.  Did you have anymore you wanted to say?
00:15  4            MR. LEONARD:  No, Judge, that's it, and of course --
00:15  5            THE COURT:  Okay.
00:15  6            MR. LEONARD:  -- his probably imminent departure to
00:15  7  Mexico because of the case.
00:15  8            THE COURT:  Well, there is that as well, okay.
00:15  9            Mr. Vargas, do you want to say anything?
00:15  10           THE DEFENDANT:  Yes.  Thank you.  I just want to
00:15  11  thank you guys for giving me the opportunity to speak.  I just
00:15  12  want to say that I'm sorry.  And not only did I embarrass my
00:16  13  community, but my family and me as well.  And while I've been
00:16  14  incarcerated, I had time to reflect on my actions, and I know
00:16  15  what I did was wrong.  I just want to say I'm sorry.
00:16  16           THE COURT:  Okay.
00:16  17           THE DEFENDANT:  Thank you.
00:16  18           THE COURT:  Well, I mean, that is the other side of
00:16  19  it is we're always talking about individuals, and I'm -- in
00:16  20  some way, I mean, I'm sorry especially that you're going to end
00:16  21  up probably getting deported.  And I guess it's one of those
00:16  22  things.  You know, you act in a moment, and you're not
00:16  23  thinking, and you're sorry later.  It's just that, at some
00:16  24  point, part of being an adult, while you're young, you are an
00:16  25  adult -- or were an adult at that time -- is getting enough

00:16  1    control over our actions that we don't do really bad or
00:16  2    destructive things in an impulse.

00:16  3            Okay.  The nature and circumstances of the offense, I
00:16  4    think I've already talked about it enough.  Your history and
00:17  5    characteristics.  You know, this isn't the only time you've had
00:17  6    problems.  On the other hand, I'm sure that you are a nice
00:17  7    young man, and I think that the repercussions, apart from
00:17  8    mandatory minimum prison, being deported are going to be --
00:17  9    they are, in that sense, they are harsh for, you know, a couple
00:17  10   of days in time.

00:17  11           But I need for the sentence to reflect the
00:17  12   seriousness of the offense and promote respect for the law, and
00:17  13   provide just punishment, and afford adequate deterrence to
00:17  14   criminal conduct which -- and protect the public from any
00:18  15   further crimes by you.  I'd like to think that it could get you
00:18  16   some education and vocational training, I don't know if that
00:18  17   will happen, but try to get you some medical help with the drug
00:18  18   addiction.

00:18  19           So I must impose a sentence that's sufficient but not
00:18  20   greater than necessary.  I think we really, as I said, I --
00:18  21   there is this five-year mandatory minimum.  And when you tell
00:18  22   me about sentences that others have given, you know, I don't
00:18  23   know what those circumstances were, but that's what the
00:18  24   sentence is.  And so I will sentence you to 60 months in the
00:18  25   Bureau of Prisons.

00:18  1    Since you will be -- I don't know if we need to put
00:19  2  any conditions of supervised release on.
00:19  3    MR. JONAS:  Judge, I know that probation recommended
00:19  4  no supervised release, and I assume it's because the
00:19  5  expectation of --
00:19  6    THE COURT:  That would be the reason.
00:19  7    MR. JONAS:  -- him going into ICE custody.
00:19  8    My position, and I'll defer to your Honor on this, is
00:19  9  I'm always concerned that he may slip through the cracks and
00:19  10  Homeland Security would not pick him up.  In which case, I'd
00:19  11  like to seek conditions of supervised release.  But I
00:19  12  understand the reason why not to do that.  I'll defer to your
00:19  13  Honor on that.
00:19  14    THE COURT:  Well, I guess I won't impose them.
00:19  15    There is restitution.  I don't know how you're going
00:19  16  to be able to enforce that.  But there is restitution of
00:19  17  $12,346.75 to be paid jointly and severally with whoever else
00:20  18  was I guess convicted of the same.
00:20  19    MR. JONAS:  Right, Judge.  So 1,500 is on the
00:20  20  defendant alone for the damage to the Egg Harbor Restaurant.
00:20  21  10,846 would be joint and severable for the damage to the ATM
00:20  22  with the other defendants.  One defendant in that case was
00:20  23  convicted at trial last June.  The other defendant was a hung
00:20  24  jury.  He's being re-tried in a week and a half.
00:20  25    THE COURT:  Okay.

00:20  1    MR. JONAS:  But I think the full amount needs to be

00:20  2  imposed by the court against the defendant.  And if other

00:20  3  defendants, again, are able to pay some restitution, that would

00:20  4  ultimately lessen the amount the defendant has to pay.

00:20  5    THE COURT:  All right.  So $1,500, is that what you

00:20  6  said?

00:20  7    MR. JONAS:  $1,500 for the damage to the Egg Harbor

00:20  8  Restaurant.  And $10,846 for the damage to the ATM.

00:20  9    THE COURT:  Okay.  That's the way we will phrase it.

00:20  10    THE CLERK:  Judge, just one note.  I have not

00:20  11  received the restitution Excel.

00:21  12    MR. JONAS:  I attached it to -- I believe I attached

00:21  13  it to the government's version.  But if I hadn't, I apologize.

00:21  14  I am handing it to the court now.

00:21  15    THE COURT:  Maybe it was.

00:21  16    No, not -- well, not as it was printed out for me.

00:21  17  It's possible that -- I'm not sure Rose always prints the

00:21  18  attachments, so it might not have.  But, all right, we've got

00:21  19  it now.

00:21  20    Okay.  There is also $100 special assessment that I

00:21  21  must impose.  I think that's all.

00:21  22    You have 14 days to file a notice of appeal.

00:21  23    I will make a recommendation that you receive drug

00:21  24  and alcohol treatment, and if -- I don't know, I can recommend

00:21  25  a place, if you want me to.

00:21    1            MR. LEONARD:  Yes, Judge, we would ask that you make

00:21    2   a recommendation for Oxford, Wisconsin.

00:21    3            THE COURT:  I'll do that.

00:21    4            MR. LEONARD:  Okay.  We appreciate that.

00:21    5            THE COURT:  Okay.  You're young.  You really had a

00:21    6   terrible setback.  I hope that -- you know, you've got many

00:22    7   years to come.  And I do hope very much that you are able to

00:22    8   find a place in society that will be good for you and for

00:22    9   everyone else.  So good luck, thank you.

00:22   10            MR. JONAS:  Your Honor, one thing.  I don't know if

00:22   11   this would be before your Honor or before Judge Kennelly, but

00:22   12   we would move to dismiss 20 CR 331 against the defendant.  That

00:22   13   is the other case that was a stipulated offense.

00:22   14            THE COURT:  Yeah.  Can I do that?

00:22   15            THE CLERK:  No, Judge.  If it's assigned to Judge

00:22   16   Kennelly, it should be --

00:22   17            MR. JONAS:  That's Judge Kennelly?  Okay.  We will

00:22   18   make the motion before Judge Kennelly, then.

00:22   19            THE COURT:  Okay.  We will do that.

00:22   20            MR. LEONARD:  Thank you, Judge.

00:22   21            MR. JONAS:  Thank you, Judge.

00:22   22            THE COURT:  Okay.  Thank you.

        23          (Which were all the proceedings heard.)

        24

        25

1      CERTIFICATE

2          I certify that the foregoing is a correct transcript from

3      the record of proceedings in the above-entitled matter.

4

5      /s/ *SANDRA M. TENNIS*                    April 18, 2022

6      SANDRA M. TENNIS, CSR, RMR, FCRR
       Official Court Reporter
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25